UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL EUGENE MOORE,

        Petitioner,

v.                          Case No. 3:09-cv-1022-J-34JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

## ORDER

### I. Status

Petitioner Moore initiated this action by filing a pro se Petition for Writ of Habeas Corpus (Doc. #1) and Memorandum of Law in Support of the Petition (Doc. #2) with exhibits (Pet. Ex.) under 28 U.S.C. § 2254 on October 8, 2009, pursuant to the mailbox rule. Petitioner filed an Amended Petition (Doc. #9) on November 5, 2009. He challenges a 2008 state court (Nassau County, Florida) judgment of conviction for driving while license suspended or revoked. Respondents have submitted a memorandum in opposition to the Amended Petition. See Respondents' Answer to Petition for Writ of Habeas Corpus (Response) (Doc. #16) with exhibits (Resp. Ex.). On February 2, 2010, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. #14), admonishing Petitioner regarding his obligations and giving Petitioner a time frame in which to submit a reply. Petitioner submitted a brief in reply on August 24, 2011. See Petitioner's Amended Reply to Respondents' Answer to

Petition for Writ of Habeas Corpus (Reply) (Doc. #21). This case is ripe for review.

## II. Procedural History

On February 12, 2008, the State of Florida charged Moore with felony habitual driving while his license was suspended or revoked. Resp. Ex. 1, Information; Fla. Stat. § 322.34(5) (2007). On April 3, 2008, Moore entered a plea of guilty, and the trial court sentenced Moore to a term of twelve months of probation. Resp. Exs. 3; 4. On or about July 9, 2008, Probation Officer Christy Alexander filed an affidavit for violation of probation. Resp. Ex. 4. Pursuant to a negotiated plea of guilty, Moore admitted to the violation of probation on October 9, 2008. Resp. Ex. 5. On October 9, 2008, the trial court sentenced Moore to a term of five years of incarceration. Resp. Ex. 6. Petitioner did not appeal.

On February 4, 2009, Petitioner filed a pro se motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800, asserting that the trial court erred in sentencing him as a habitual felony offender where the State relied on inadmissible hearsay to qualify him as a habitual offender. Resp. Ex. 7. The trial court, on March 4, 2009, denied Moore's motion. Resp. Ex. 8. Petitioner did not appeal.

On March 23, 2009, Petitioner filed a second pro se motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800 (Rule 3.800 motion), asserting that the trial court

erred in sentencing him as a habitual felony offender due to uncounseled prior misdemeanor convictions used to enhance the sentence. Resp. Ex. 9. The trial court denied Moore's motion on March 31, 2009. Resp. Ex. 10. Petitioner appealed the denial of his Rule 3.800 motion. Resp. Ex. 11. On August 11, 2009, the appellate court affirmed the trial court's decision per curiam, see Moore v. State, 14 So.3d 1008 (Fla. 1st DCA 2009); Resp. Ex. 12, and the mandate issued on September 9, 2009, see Resp. Ex. 12.

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of limitations. See 28 U.S.C. § 2244(d); Response at 2-4.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert.

3

denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

## V. Standard of Review

The Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d). This standard is described as follows:

> As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2003).
>
> As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:
>
> > A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context. An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable. Questions of law and mixed questions of law and fact are reviewed de novo, as is the district court's conclusion regarding the reasonableness of the state court's application of federal law.

> Jennings v. McDonough, 490 F.3d 1230, 1236 (11th Cir. 2007) (quotation marks and citations omitted). In sum, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409, 120 S.Ct. at 1521. Finally, 28 U.S.C. § 2254(e)(1) commands that for a writ to issue because the state court made an "unreasonable determination of the facts," the petitioner must rebut "the presumption of correctness [of a state court's factual findings] by clear and convincing evidence."[1] 28 U.S.C. § 2254(e)(1).

Ward v. Hall, 592 F.3d 1144, 1155-56 (11th Cir. 2010), cert. denied, 131 S.Ct. 647 (2010).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Harrington v. Richter, 131 S.Ct. 770, 785 (2011) (holding that section 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits); Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003).  Thus, to the extent that Petitioner's claim was

---

[1] "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

adjudicated on the merits in the state courts, it must be evaluated under § 2254(d).

## VI. Findings of Fact and Conclusions of Law

As ground one, Petitioner claims that his five-year sentence is illegal. He asserts that the state trial court lacked jurisdiction to impose the five-year sentence when it could not use prior uncounseled misdemeanor convictions to reclassify the instant offense to a third degree felony. See Amended Petition at 5. He raised the issue in his Rule 3.800 motion, see Resp. Ex. 9, and in denying the motion, the trial court stated:

> Defendant again attacks his habitual offender sentence, one in which he entered into at his request (See copy of last order entered March 4, 2009 attached hereto). Defendant alleges that all his prior sentences were imposed without the benefit of counsel. In defendant's first paragraph of his Statement of Facts he alleges that he was "uncounseled" in Case No. 45-2003-CT-001386. As the attachments hereto show, counsel was appointed to represent defendant on November 11, 2003, and was present at entry of the Judgment and Sentence.

Resp. Ex. 10.   Upon Petitioner's appeal, the appellate court affirmed the trial court's decision per curiam.

Assuming the appellate court affirmed the denial of the Rule 3.800 motion as to this claim on the merits, there are qualifying state court decisions.  Therefore, this claim will be addressed applying the deferential standard for federal court review of state court adjudications required by AEDPA.  After a review of the

6

record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Alternatively, if the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is, nevertheless, without merit. The following facts are pertinent for resolution of Petitioner's claim. On February 12, 2008, the State of Florida charged Petitioner, as a habitual traffic offender,[2] with driving while license suspended or revoked, contrary to the provisions of Florida Statutes section 322.34(5). Resp. Ex. 1. On April 3, 2008, Moore entered a plea of guilty, and the trial court sentenced him to a term of twelve months of probation. Resp. Exs. 2; 3; 10, attached Transcript of the April 3, 2008 Hearing. After he violated his probation, pursuant to a

---

[2] A "habitual traffic offender" is defined as "any person whose record, as maintained by the Department of Highway Safety and Motor Vehicles, shows that such person has accumulated the specified number of convictions for offenses described in subsection (1) or subsection (2) within a 5-year period . . . ." Fla. Stat. § 322.264. Subsection (1) provides for a habitual traffic offender designation with three or more convictions for separate acts of driving a motor vehicle while his or her license is suspended or revoked. See Fla. Stat. § 322.264(1)(d).

negotiated plea of guilty, the trial court sentenced Moore to a five-year term of imprisonment on October 9, 2008. Resp. Exs. 4; 5; 6.

As previously stated, Petitioner asserts that his five-year sentence is illegal because the trial court could not use prior uncounseled misdemeanor convictions to reclassify the instant offense to a third degree felony. First, it is noteworthy that Petitioner was charged with driving while his license was suspended or revoked, contrary to the provisions of Florida Statutes section 322.34(5), which provides:

> Any person whose driver's license has been revoked pursuant to s. 322.264 (habitual offender) and who drives any motor vehicle upon the highways of this state while such license is revoked is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.[3]

In Patterson, the Second District Court of Appeal explained the reclassification (of driving while license suspended) from a misdemeanor to a third-degree felony.

> Thus, a person who is charged with a fourth offense of driving while his license is suspended may be charged with either (1) the third-degree felony described in section 322.34(2)(c), or (2) the third-degree felony described in section 322.34(5), as long as the DHSMV [(Department of Highway Safety and Motor Vehicles)] has revoked his driver's license as

---

[3] Florida Statutes section 775.082 provides that a person who has been convicted of a felony of the third degree may be punished by a term of imprisonment not exceeding five years. Fla. Stat. § 775.082(3)(d).

8

> a habitual traffic offender. Although both offenses are third-degree felonies, the elements of each offense are different. Each requires a current offense of driving while license suspended, but section 322.34(2)(c) specifically relies upon proof of the prior convictions to support the reclassification of the current offense, while section 322.34(5) relies upon proof of the DHSMV's designation of the defendant as a habitual traffic offender to reclassify the offense.

Patterson v. State, 938 So.2d 625, 628 (Fla. 2nd DCA 2006).

In the instant case, the three prior misdemeanor convictions at issue are: Case Nos. 45-2003-CT-001386; 45-2004-CT-000173; and 45-2004-CT-001132.  In Case No. 45-2003-CT-001386, the State of Florida charged Moore on October 27, 2003, with driving while his license was suspended or revoked, contrary to Florida Statutes section 322.34.  Pet. Ex. at 123-28.  On November 12, 2003, the state court appointed Assistant Public Defender Daniel S. Brim to represent Moore; counsel filed a motion for statement of particulars and a notice of discovery.  Id. at 154, 161, 162.  On March 8, 2004, Moore entered a plea of nolo contendere; the court withheld adjudication and imposed court costs.  Id. at 126-27; Resp. Ex. 13, Judgment and Sentence.

In Case No. 45-2004-CT-000173, the State of Florida charged Moore on February 2, 2004, with driving while his license was suspended or revoked, contrary to Florida Statutes section 322.34. Id. at 129-32.  On February 10, 2004, he entered a plea of guilty; the court withheld adjudication and imposed court costs.  Id. at

9

132; Resp. Ex. 14.  On August 19, 2004, in Case No. 45-2004-CT-001132, the State of Florida charged Moore with driving while his license was suspended or revoked, contrary to Florida Statutes section 322.34, and reckless driving contrary to section 316.192.1. Id. at 134-41.  Moore entered a plea of nolo contendere on November 8, 2004; the court imposed court costs.  Id. at 138-39; Resp. Ex. 15, Judgment and Sentence.

In Moore's Affidavit submitted in support of his Rule 3.800 motion, he avers:

> I Michael E. Moore assert under oath: (1) that the following cases were punishable by imprisonment. Case No.'s 45-2003-CT-001386, 45-2004-CT-000173, and 45-2004-CT-001132. (2) I was indigent and, thus entitled to court appointed counsel, which I sought to have in each of the above cases. (3) **I was informed that counsel could not be appointed because the State was not seeking any further jail time.** (4) and to the best of my knowledge I did not knowingly waive my right to counsel, in any of the above mentioned cases.

Id. at 122, Affidavit, dated March 17, 2009 (emphasis added). Moore now acknowledges that counsel represented him in Case No. 45-2003-CT-1386.  Id. at 100.

In support of his assertion in the instant case, Moore cites State v. Kelly, 999 So.2d 1029 (Fla. 2008), decided on December 30,

10

2008.[4] Before <u>Kelly</u> was decided, some Florida cases held that defendants did not have a right to counsel where a misdemeanor was charged and there was no imprisonment. See <u>State v. Dunning</u>, 995 So.2d 1162, 1162-63 (Fla. 2nd DCA 2008) (holding, based upon <u>Scott v. Illinois</u>, 440 U.S. 367, 373 (1979), that "a defendant has no constitutional right to counsel to defend against a misdemeanor charge when a sentence of imprisonment is not imposed"); <u>Harrell v. State</u>, 469 So.2d 169, 170-71 (Fla. 1st DCA 1985) (relying on the rationale of <u>Scott</u> and stating "the right to counsel does not attach in those misdemeanor cases where the accused suffers no confinement"), <u>rev</u>. <u>denied</u>, 479 So.2d 118 (Fla. 1985).

In <u>Kelly</u>, however, the Florida Supreme Court expressly declined to follow <u>Scott</u> on state law grounds and held that the right to counsel "encompasses all cases in which imprisonment is a prospective penalty." <u>Kelly</u>, 999 So.2d at 1040. The court explained that this holding did not establish a new right, but rather merely reaffirmed long-standing precedent. <u>Id</u>. at 1043. The court explained Florida's prospective-imprisonment misdemeanor right-to-counsel standard:

> In <u>Argersinger v. Hamlin</u>, 407 U.S. 25, 35-40, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), the United States Supreme Court appeared to hold that prospective imprisonment for a misdemeanor offense guarantees indigents a

---

[4] The trial court imposed Moore's five-year term of imprisonment on October 9, 2008, well before the Florida Supreme Court decided <u>Kelly</u>. Resp. Ex. 6.

11

right to appointed counsel, but the Court clarified in <u>Scott v. Illinois</u>, 440 U.S. 367, 373-74, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979), that under the Sixth Amendment this right is limited to cases in which the defendant is <u>actually</u> <u>imprisoned</u> for the charged offense. Florida, however, has provided a different standard through its Constitution, Rules of Criminal Procedure, and the Florida Statutes. <u>See</u> art. I, §§ 2, 16, Fla. Const.; Fla. R.Crim. P. 3.111, 3.160; § 27.51, Fla. Stat. (2003). In Florida, indigent criminal defendants have a right to appointed counsel "<u>for offenses punishable by imprisonment</u>." Fla. R.Crim. P. 3.111(b)(1) (1992) (emphasis supplied).

This standard provides a more broadly constructed right to counsel than the federal actual-imprisonment standard, as it encompasses all cases in which imprisonment is a prospective penalty. The trial judge only possesses restricted discretion to limit this right by certifying, in writing, before trial that the defendant will not be imprisoned. <u>See</u> Fla. R.Crim. P. 3.111(b)(1) (1992).

. . . .

These rules and statutory sections unambiguously differentiate an indigent criminal defendant's right to counsel in a misdemeanor case under Florida law from that of a similarly situated defendant under federal law. The courts of this state have also recognized this distinction. <u>See</u>, <u>e.g.</u>, <u>Case v. State</u>, 865 So.2d 557, 558 (Fla. 1st DCA 2003) ("A defendant who is charged with a misdemeanor <u>punishable by possible imprisonment</u> is entitled to counsel unless the judge timely issues a written order guaranteeing that the defendant will <u>never</u> be incarcerated <u>as a result of the conviction</u>." (emphasis supplied)).

Florida law draws the entitlement line at prospective punishment (i.e., offenses punishable by imprisonment), while federal law

12

> draws a less protective entitlement line at actual imprisonment (i.e., there is no right to counsel unless the defendant is actually incarcerated as a result of the offense). The committee comments to Florida Rule of Criminal Procedure 3.111 further emphasize the difference between the Florida and federal standards. <u>Compare</u> Fla. R.Crim. P. 3.111, committee note (1972) ("The committee determined that <u>possible deprivation of liberty for any period</u> makes a case serious enough that the accused should have the right to counsel." (emphasis supplied)), <u>with</u> <u>Scott</u>, 440 U.S. at 373-74, 99 S.Ct. 1158 ("<u>[A]ctual imprisonment</u> is a penalty different in kind from fines or the mere threat of imprisonment-[that standard] is eminently sound and warrants adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel." (emphasis supplied)).
>
> . . . .
>
> Under Florida law, [Petitioner] therefore maintained a right to counsel pursuant to Rule of Criminal Procedure 3.111 because misdemeanor DUI is an offense punishable by imprisonment. As a corollary, [Petitioner] was entitled to appointed representation from the Public Defender's Office under section 27.51, Florida Statutes. In contrast, under federal law, [Petitioner] would not have had a right to counsel because he was not imprisoned as a result of either plea. <u>See</u> <u>Scott</u>, 440 U.S. at 373-74, 99 S.Ct. 1158.

<u>Id</u>. at 1039-41.

The federal actual-imprisonment standard is based on <u>Scott</u> and <u>Nichols v. United States</u>, 511 U.S. 738 (1994). In <u>Scott</u>, the United States Supreme Court clarified that <u>Argersinger</u> limited indigent defendants' Sixth Amendment right to appointed counsel to

13

cases in which the defendant is actually imprisoned. Scott, 440 U.S. at 373. Later, in Nichols, the Court stated:

> Today, we adhere to Scott v. Illinois, supra, and overrule Baldasar.[5] Accordingly, we hold, consistent with the Sixth and Fourteenth Amendments of the Constitution, that an uncounseled misdemeanor conviction, valid under Scott because no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction.

Nichols, 511 U.S. at 748-49.

Given the record of Moore's prior misdemeanor convictions, valid under Scott (because Moore was not sentenced to any term of incarceration and counsel represented him in Case No. 45-2003-CT-001386), and the clearly established federal law governing the use of uncounseled misdemeanor convictions to enhance punishment as a subsequent conviction, see Nichols, Moore's claim does not warrant federal habeas corpus relief. Even if the two uncounseled misdemeanor convictions ( 45-2004-CT-000173 and 45-2004-CT-001132) were used to enhance the crime to which Moore pled guilty from a

---

[5] In Baldasar, the Court held that a prior uncounseled misdemeanor conviction, constitutional under Scott, could not be used collaterally to convert a second misdemeanor into a felony under the applicable Illinois sentencing enhancement statute. Baldasar v. Illinois, 446 U.S. 222 (1980), overruled by, Nichols v. United States, 511 U.S. 738 (1994).

14

misdemeanor to a felony,[6] there is no federal constitutional violation under the express holding of Nichols.

## VII. Conclusion

Upon consideration of the foregoing, the undersigned finds that Petitioner's claim fails. Accordingly, for these reasons, the Amended Petition will be denied, and this case will be dismissed with prejudice.

## VIII. Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Petitioner seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a

---

[6] Attempting to distinguish Nichols, Moore asserts that his prior misdemeanor convictions "constitute an element" of the instant felony offense. Memorandum of Law at 6. However, as a matter of Florida law, Moore's prior misdemeanor convictions were not elements of the instant felony offense:

> [Florida Statutes] section 322.34(5) does not require, as an element of the crime, a finding of specific prior convictions for the same or similar crimes. State v. Fields, 809 So.2d 99, 101 (Fla. 2d DCA 2002). A conviction under section 322.34(5) simply requires competent evidence showing that the DHSMV maintained a record on the motorist, that the record reflected three prior moving violation convictions, and that the motorist received notice of his designation as a habitual traffic offender and the resulting suspension of his license. Fields, 809 So.2d at 101; State v. Miller, 830 So.2d 214, 215 (Fla. 2d DCA 2002). . . .

Patterson, 938 So.2d at 630.

15

certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Amended Petition (Doc. #9) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3. If Petitioner appeals the denial of the Amended Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4. The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 5th day of July, 2012.

*Marcia Morales Howard*
MARCIA MORALES HOWARD
United States District Judge

sc 6/6
c:
Michael Eugene Moore
Ass't Attorney General (Jordan)

17